# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.H.**

**No. 18-1058** (Mingo County 18-JA-49)

**FILED**

**April 19, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father M.H., by counsel Cullen C. Younger, appeals the Circuit Court of Mingo County's October 25, 2018, order terminating his parental rights to B.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Susan J. Van Zant, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights and denying him post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed an abuse and neglect petition against the parents that alleged the child was born exhibiting symptoms of drug exposure and withdrawal, including "excessive high pitch crying, markedly hyper active [M]oro reflex, mild tremors undisturbed, increased muscle tone, molting, poor feeding, feeding infrequent and uncoordinated."[2] The child's umbilical cord blood additionally tested positive for buprenorphine, cocaine, and THC. According to the petition, the mother tested positive for "THC, . . . Subutex, [and] Gabapentin" upon the child's birth. The petition further alleged that the mother tested positive for cocaine and other drugs during her pregnancy and had track marks on her arms when she arrived at the hospital to give birth. Although petitioner and the mother were initially present at the hospital, when the petition

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The document was styled as an "Amended Petition," but it is unclear from the record whether a prior petition was filed.

was filed, the DHHR was unable to make contact with them in order to conduct an interview. The DHHR attempted a home visit and also scheduled a meeting with the parents over the phone, but the parents did not appear as scheduled. Further, the petition alleged possible domestic violence in the home based upon the mother reporting to the hospital "covered in bruises." As to petitioner, the DHHR alleged that he failed to protect the child from abuse and neglect.[3]

In June of 2018, the circuit court held a preliminary hearing.[4] During the hearing, the DHHR presented evidence from a Child Protective Services ("CPS") worker that petitioner "admitted that he knew of [the mother's] drug use." In fact, the witness testified that petitioner "wanted to know if it would hurt him getting his child back or not after he'd already admitted to knowing of her drug use." On cross-examination, the witness indicated that petitioner claimed he did not know about the mother's cocaine use, but reiterated that he admitted that he knew about the THC and buprenorphine. At that time, the DHHR requested that petitioner submit to paternity testing. At the conclusion of the preliminary hearing, the circuit court found probable cause to support the child's removal and ordered that both parents submit to drug screens that same day. The circuit court also ordered the parents to attend inpatient rehabilitation. According to the record, the child's guardian ad litem contacted a rehabilitation facility one day prior to the hearing and the facility had openings to accept the parents.

In August of 2018, the circuit court held an adjudicatory hearing. Petitioner did not attend, but was represented by counsel. Counsel informed the circuit court that petitioner was supposed to check into a detoxification program that day, but, despite requesting confirmation of petitioner's submission to this program, counsel had not received any such confirmation. The circuit court took judicial notice of all prior testimony in the matter and found clear and convincing evidence existed that petitioner "abused and neglected the subject[] child[]."

In October of 2018, the circuit court held a dispositional hearing. Again, petitioner did not attend, but was represented by counsel. Once again, counsel informed the circuit court that petitioner indicated the day prior to the hearing that he was "on his way to detox." Again, counsel requested confirmation of petitioner's submission to the program and received nothing in return. A DHHR worker testified that, aside from petitioner contacting him to say he would not be present for a hearing, petitioner failed to maintain communication with the DHHR regarding the proceedings. According to the witness, the DHHR placed numerous calls and left messages with petitioner in order to complete his paternity testing, but petitioner never returned the calls. The DHHR also never received any confirmation that petitioner was enrolled in substance abuse treatment. Finally, the DHHR indicated that petitioner had "absolutely no contact with the child" after the child was released from the hospital. Based on this evidence, the circuit court found there

---

[3]Because petitioner was not listed on the child's birth certificate, the DHHR included an unknown father in its petition. The unknown father remained a party to the proceedings throughout and, ultimately, the circuit court terminated the parental rights of the unknown father, in addition to petitioner's parental rights. On appeal, petitioner does not dispute that he is the child's father or otherwise raise any argument related to this issue.

[4]The circuit court held an earlier preliminary hearing in May of 2018, but continued the matter upon being informed that service of the petition had not been perfected.

2

was no reasonable likelihood the conditions of abuse or neglect could be substantially corrected and that termination of petitioner's parental rights was necessary for the child's welfare. Accordingly, the circuit court terminated petitioner's parental rights. It is from the dispositional order that petitioner appeals.[5]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, the Court finds no error in the proceedings below.

In support of his assignment of error regarding termination of his parental rights, petitioner sets forth several arguments related to phases of the proceedings in addition to disposition. First, petitioner argues that the evidence was insufficient to support his adjudication. Second, petitioner argues that the DHHR failed to make reasonable efforts to preserve the family. Third, petitioner argues that he was not provided an opportunity to participate in services and, therefore, the circuit court could not have made a determination as to whether the circumstances of abuse and neglect were correctable. We find no merit in these arguments and address each in turn.

The record in this matter is clear that sufficient evidence existed to support the circuit court's adjudication of petitioner. As this court has held,

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in

---

[5]All parents' parental rights to the child have been terminated. The permanency plan is adoption by the child's current foster family.

the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). Additionally, in regard to a mother's substance abuse during pregnancy, this Court has recently established that

> [w]hen a child is born alive, the presence of illegal drugs in the child's system at birth constitutes sufficient evidence that the child is an abused and/or neglected child, as those terms are defined by W. Va. Code § 49-1-201 (2015) (Repl. Vol. 2015), to support the filing of an abuse and neglect petition pursuant to W. Va. Code § 49-4-601 (2015) (Repl. Vol. 2015).

Syl. Pt. 1, *In re A.L.C.M.*, 239 W. Va. 382, 801 S.E.2d 260 (2017). The Court went on to explain that "with respect to Father's alleged failure to stop Mother's illegal drug use during her pregnancy, the statutes governing abuse and neglect proceedings allow a finding of abuse to be based upon a parent's knowledge that another person is harming his/her child." *Id*. at 391-92, 801 S.E.2d at 269-70.

Here, petitioner admitted to his knowledge of the mother's substance abuse.[6] Petitioner attempts to mitigate this testimony by pointing out that he was "only . . . aware of [the mother's] use of Suboxone[7] and marijuana" and not her use of cocaine. This distinction is immaterial, as marijuana is still an illegal drug and there was never any evidence introduced that the mother had a valid prescription for Suboxone. Petitioner further argues that the CPS worker testified that "she did not know if [petitioner] was aware of the . . . [m]other's drug use at the time of the filing of the [p]etition" and that she only offered speculation. This argument, however, is unsupported by

---

[6]In his petition for appeal, petitioner asserts that the CPS worker testified at the preliminary hearing that she had not spoken to petitioner at the time the petition was filed. Petitioner appears to attempt to rely on this testimony to support his argument that the DHHR did not satisfy its burden of proof at adjudication related to establishing "conditions existing at the time of the filing of the petition." This argument lacks merit for two reasons. First, in regard to whether there existed probable cause to remove the child from petitioner's care as the circuit court found at the preliminary hearing, it was uncontested that the parents left the child at the hospital suffering from drug withdrawal and could not be located by the DHHR when it attempted to schedule an interview with the parents. This alone was sufficient to show that the child was in imminent danger and that removal was proper. *See* W. Va. Code § 49-1-201 ("'Imminent danger to the physical well-being of the child' means an emergency situation in which the welfare or the life of the child is threatened."); *Id*. at § 49-4-602 (permitting a child to be placed in the DHHR's care, custody, and control upon the filing of a petition constituting "imminent danger to the physical well-being of the child" when no reasonable alternative is available). Second, the burden of proof petitioner references regarding evidence of the conditions that existed at the time of the petition's filing applies to adjudication, not the preliminary hearing. As such, any argument that the DHHR did not have sufficient evidence to support adjudication at the time of the preliminary hearing lacks a basis in the law and, as more fully explained above, the specific facts of this case.

[7]Suboxone is a specific product that contains the drug buprenorphine, which was found in testing of the child's umbilical cord blood.

4

the record. At adjudication, petitioner's counsel questioned the CPS worker about when she learned that petitioner knew of the mother's drug use. During questioning, the following exchange occurred:

Q:      What I'm asking you is did you know whether he had knowledge or not of the circumstances at the time of the filing of the petition?

A.      No.

Q:      So you did not know if he had knowledge of it. Is that correct?

A:      I would say he did because the nurses had spoke with the family and stated there was drug use.

Q:      So your testimony was he subsequently came in and spoke to you at the Department. Correct?

A:      Yes.

Q:      And you said that he admitted that he knew about the drug use?

A:      He did admit that he knew of [the mother's] drug use.

Despite the witness's reference to nurses speaking with the family at the hospital, it is clear that these questions were not related to when petitioner became aware of the mother's drug use, but, rather, when the CPS worker became aware that petitioner knew of the mother's drug use. Simply put, there is nothing in the record to support petitioner's assertion that the evidence shows he became aware of the drug use after the mother gave birth. On the contrary, the totality of the evidence shows that petitioner was aware of the mother's drug use during pregnancy. This includes the fact that petitioner admitted to the DHHR that he was aware of the drug use and the evidence surrounding the child's birth, including the mother testing positive for drugs during the pregnancy and appearing at the hospital to give birth with visible track marks and testing positive for multiple drugs at that time. Accordingly, we find no error in this regard.

We further find that petitioner is entitled to no relief in regard to his argument that the DHHR did not make reasonable efforts to preserve the family. In support, petitioner argues that he was provided no services and was required to submit to substance abuse treatment despite there being no allegations of substance abuse against him. We find these arguments to be without merit and initially note that petitioner raised no objection to the circuit court's requirement that he submit to substance abuse treatment. "Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (quoting *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)). Accordingly, we will not consider this issue on appeal. Further, the record shows that petitioner was provided services and failed to comply with even the most basic orders of the circuit court. At the preliminary hearing, the circuit court ordered petitioner to submit to a drug screen, yet there is no evidence in the record that petitioner

complied with this order. Moreover, the DHHR offered petitioner paternity testing by attempting to contact him on multiple occasions and leaving messages, yet petitioner never returned the DHHR's calls. As such, it is clear that the DHHR satisfied its statutory responsibility to make reasonable efforts to preserve the family prior to termination. *See* W. Va. Code § 49-4-604(a) (requiring the DHHR to make reasonable efforts to "prevent removal or to make it possible for a child to return to the care of his or her parent(s) safely"). Given that petitioner could not comply with these basic requests, it is clear that additional services were not warranted. This is especially true in light of the fact that petitioner represented to his counsel on two separate occasions that he would attend substance abuse treatment, but failed to provide any corroboration for his enrollment in such treatment. Accordingly, petitioner is entitled to no relief.

All of this evidence similarly supports the circuit court's termination of petitioner's parental rights. Petitioner argues that, because he was not allowed to participate in services, the circuit court could not have found that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected. We do not agree because, as outlined above, petitioner was provided the opportunity to participate in the most basic services available, yet failed to establish a single instance of compliance. According to West Virginia Code § 49-4-604(c)(2), a situation in which there is no reasonable likelihood that conditions of neglect or abuse can be substantially corrected includes one in which "[t]he abusing parent . . . [has] willfully refused or [is] presently unwilling to cooperate in the development of a reasonable family case plan designed to lead to the child's return to their care, custody and control[.]" The record supports a finding that there was no reasonable likelihood the conditions of abuse and neglect could be corrected in the near future, based on petitioner's complete failure to participate in any aspect of the proceedings, including the formulation of a family case plan designed to reunify him with the child.

Further, West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. As set forth above, the circuit court had ample evidence upon which to base its finding that there was no reasonable likelihood the conditions of neglect could be substantially corrected. Similarly, there was ample evidence to support the circuit court's finding that termination of petitioner's parental rights was necessary for the child's welfare, especially considering the drastic medical condition of the child and petitioner's absence following her birth.

This Court has held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Further, "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at

6

875, syl. pt. 4 (quoting syl. pt. 1, in part, *In re R.J.M.,* 164 W. Va. 496, 266 S.E.2d 114 (1980)). Based on the foregoing, it is clear that substantial evidence existed to support these findings. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in ordering that he have no contact with the child following disposition. In support of this assignment of error, petitioner simply reiterates arguments provided in support of his preceding assignment of error, such as his allegation that he was denied services and that, by denying him contact with his child during the proceedings, he was "improperly denied the opportunity to produce evidence that contact with his child would be in said child's best interests." These arguments are not compelling. As petitioner acknowledges,

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Petitioner admits that he did not have a bond with the child, although he argues that this lack of bonding was created by the DHHR's inappropriate actions in the case. Given that petitioner has failed to establish any error on the part of the circuit court related to these proceedings, it is clear that this argument has no merit. Because petitioner had no bond with the child, we find no error in the circuit court's order denying contact between petitioner and the child following disposition.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 25, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: April 19, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison